**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-61358-BLOOM/Valle**

AARON VANTREASE,

     Plaintiff,

v.

UNITES STATES POSTAL SERVICE,

     Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

    **THIS CAUSE** is before the Court upon Defendant's Motion for Partial Summary Judgment, ECF No. [92] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Response, ECF No. [105], the Reply, ECF No. [116], all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.    INTRODUCTION**

    This case arises from alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiff Aaron Vantrease ("Plaintiff") seeks recovery for unpaid overtime (Count 1) and retaliation (Count 3). *See* Amended Complaint, ECF No. [42].[1] In the Motion, Defendant requests summary judgment on Plaintiff's claims for hours worked under forty (40) hours per week, retaliation, and hostile work environment. As Plaintiff correctly points out, however, the Amended Complaint does not allege a claim for unpaid minimum wages under the

---

[1] Plaintiff's claim for unpaid wages under Florida law (Count 2) was dismissed for lack of jurisdiction. ECF No. [59].

FLSA, or for hostile work environment separate from his retaliation claim. *See* ECF No. [105] at 4, 18. As such, the only claim at issue in Defendant's Motion is Plaintiff's retaliation claim.

## II.     RELEVANT FACTS

Plaintiff was as a Rural Carrier Associate ("RCA") for the United States Postal Service ("USPS") from February 2017 until his termination on September 13, 2018. Defendant's Undisputed Statement of Material Facts ("Def. SOMF"), ECF No. [92] at 2-6, ¶ 1; ECF No. [91-15].[2] As an RCA, Plaintiff delivered mail and packages to Postal Service customers, filling in for other carriers, or when he was assigned to assist a carrier. Def. SOMF ¶ 2. Plaintiff also delivered Amazon packages and other special mail. *Id.* Plaintiff worked out of two postal stations—the Delray Main and Delray West stations. *Id.* ¶ 3. Plaintiff's immediate supervisor at Delray West was Michael Razzano, and his supervisors at the Main Post Office were Tia Odom and Vince Rollerson. *Id.* ¶ 4; Plaintiff's Opposing Statement of Material Facts ("Pl. SOMF"), ECF No. [106] ¶ 4. Plaintiff was also supervised by John Miceli and John Fanelli. Def. SOMF ¶ 5. The manager for the Delray West branch for most of the time of Plaintiff's employment was Steve Maiorino. *Id.* ¶ 6.

Beginning in mid-2017, Plaintiff reported issues of missing wages and failure to pay overtime to his superiors and human resources. Pl. SOMF ¶ 25; ECF No. [107-1]. Plaintiff also complained to Maiorino. *Id.* ¶ 26. In late 2017, Plaintiff complained to the Postal Service's Office of Inspector General ("OIG") about alleged time card fraud being committed by other USPS employees, including USPS management. Def. SOMF ¶ 8. In early January 2018, Plaintiff reported the FLSA violations including missing overtime and other ongoing fraud and thefts to the Postmaster, Joseph Molfetto. Pl. SOMF ¶ 27. Thereafter, Plaintiff lodged a congressional

---

[2] Where a material fact is uncontroverted by the opposing party, the Court cites only to the originating Statement of Facts.

complaint regarding the alleged time card fraud committed by RCA Ashley Royster and Regular Rural Carrier Lee Ann Velez. Def. SOMF ¶ 9; Pl. SOMF ¶¶ 27, 29; ECF No. [91-2]; ECF Nos. [91-1], [107-2] ("Report"). The OIG conducted an investigation covering the time period of January 16, 2018 to March 30, 2018, and issued its Report dated April 12, 2018. Def. SOMF ¶ 8. During the investigation, Velez asked the OIG agent if the person who made the allegations against her was Plaintiff. Pl. SOMF ¶ 31. Molfetto stated that he was not aware of any time card fraud and had not been advised of time card fraud issues occurring at Delray West. Pl. SOMF ¶ 32. On February 12, 2018, four days after the OIG agent interviewed Plaintiff's supervisor Razzano, Razzano conducted an investigative interview of Plaintiff for unsatisfactory performance and failure to follow instructions. *Id.* ¶ 35. Ultimately, according to the OIG Report, the investigation could not substantiate any of Vantrease's allegations. ECF Nos. [91-1], [107-2] at 3. On May 6, 2018, after the OIG completed its investigation, Plaintiff sent another letter to his congressman regarding the alleged time card fraud and the OIG investigation. ECF No. [91-3].

In April 2018, Royster and another USPS employee, Ebony Heller, complained about Plaintiff's conduct. Def. SOMF ¶ 10. Heller stated that she did not feel safe working around Plaintiff. Royster stated that Plaintiff made her feel uncomfortable, that he scared her, and that she feared for her life whenever they work together. ECF No. [91-4] at 3; ECF No. [107-7] at 10. Velez also complained about Plaintiff's conduct. ECF No. [91-7]. The USPS Inspection Service thereafter conducted an investigation. ECF Nos. [91-6], [107-7], [91-8], [107-13]. On May 4, 2018, Plaintiff was interviewed by two postal inspectors regarding Royster and Heller's complaints. Plaintiff admitted to making a statement sympathizing with the Parkland shooter to make a point of how evil Razzano was as a manager. ECF No. [91-10]. Plaintiff also admitted to making copies of Royster's time cards in order to prove employees were stealing time by marking incorrect start

times. *Id.* On May 8, 2018, Miceli issued Plaintiff a letter of warning for failing to follow instructions. Pl. SOMF ¶ 40. Plaintiff met with Miceli and Fanelli on May 18, 2018 and was then placed in emergency off duty status that same day. Def. SOMF ¶¶ 15-16; Pl. SOMF ¶ 39. Plaintiff was subsequently instructed to report to work on May 21, 2018, May 24, 2018, and May 29, 2018 for additional investigative interviews regarding his continued absence without leave. Pl. SOMF ¶¶ 49-50; ECF No. [107-9], [107-10]. Plaintiff did not appear on May 29, 2018. In total, Supervisor Miceli, who replaced Razzano, conducted seven investigative interviews of Plaintiff—two on April 9, 2018, two on April 20, 2018, two on May 9, 2018 and one on May 18, 2018. Pl. SOMF ¶ 39. The parties dispute whether Plaintiff was properly paid for the investigative interviews.

On May 30, 2018, the same postal inspectors interviewed Plaintiff with respect to Velez's complaint. ECF No. [91-11]. Plaintiff denied making any statements regarding an intent to harm anyone at the post office. *Id.* On July 11, 2018, supervisor Abideen Adeyemo, with the agreement of acting manager Angela Byers and approval from Maiorino, requested that Plaintiff be permanently removed from USPS employment for failure to appear as directed on May 29, 2018. Pl. SOMF ¶ 62.

Ultimately, Maiorino sent Plaintiff a text message on July 16, 2018, advising Plaintiff to report to work at Delray West on July 17, 2018. Def. SOMF ¶ 20; Pl. SOMF ¶ 20. After Plaintiff failed to report to work on July 17, 2018, USPS sent Plaintiff a letter regarding his failure to report, and instructed him to report to work on July 19, 2018. Def. SOMF ¶ 21. According to Plaintiff, the letter was delivered to his mailbox less than 24 hours before he was to report for duty. Pl. SOMF ¶ 21. Plaintiff again did not report for work on July 19, 2018, and he was sent another letter on July 21, 2018, directing him to report to work on July 25, 2018. Def. SOMF ¶ 22. Plaintiff received the letter on July 24, 2018 at 11:40 a.m., and maintains that the letter was not received

with reasonable advance notice. Pl. SOMF ¶ 22. Plaintiff did not report to work on July 24, 2018. Def. SOMF ¶ 23. By letter dated August 13, 2018, Plaintiff was advised that he was going to be removed from USPS on September 13, 2018 because he was deemed to have abandoned his position due to his failure to report to work. *Id*. ¶ 23.

### III.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty* , 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The

Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## IV.    DISCUSSION

Defendant requests summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff cannot show an adverse employment action, and he cannot show a causal connection between his protected activity and the alleged adverse actions. In addition, Defendant maintains

that there were legitimate non-retaliatory reasons for the actions taken by the Defendant, and that Plaintiff cannot show pretext.

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). When a FLSA retaliation claim is based upon circumstantial evidence, as is the case here, courts must apply the familiar *McDonnell Douglas* burden-shifting framework. *See Wolf v. Coca-Cola Co., Inc.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) ("When a plaintiff offers only circumstantial evidence to prove her Title VII claim, as Plaintiff does here, we employ the burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . . ."). This requires the following evidence to prove a *prima facie* case of retaliation: "(1) [the employee] engaged in activity protected under [the] act, (2) [the employee] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Id.* (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)).[3] If the employee satisfies the *prima facie* case, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse action. *Id.* From there, the burden shifts back to the employee to prove that the reason given for the adverse action is merely pretext. *Id.*

**A. Adverse employment action**

The Eleventh Circuit has defined an adverse employment action as "a serious and material change in the terms, conditions, or privileges of employment," *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), including "termination, failure to hire, or demotion." *Blue*

---

[3] Defendant does not dispute that Plaintiff engaged in protected activity in this case.

*v. Dunn Constr. Co., Inc.,* 453 F. App'x 881, 884 (11th Cir. 2011) (citing *Crawford v. Carroll,* 529 F.3d at 970). The employer's action must impact the terms, conditions, or privileges of the employee's job in a "real and demonstrable" or "serious and material" way." *Davis*, 245 F.3d at 1239. Here, Defendant argues that Plaintiff alleges nothing more than workplace trivialities, which are not adverse actions, but then concedes that placement of Plaintiff on emergency off duty status and his eventual termination rise to the level of adverse actions. ECF No. [92] at 10.

It bears noting that the status change and termination are not the only adverse actions Plaintiff contends were taken against him. In pertinent part, Plaintiff testified that he was removed from the schedule by Molfetto after he complained about time card shaving and other fraud by USPS employees, that Razzano conducted a frivolous investigative interview on February 12, 2018, and wrote Plaintiff up shortly after the OIG interviewed Razzano, that Plaintiff was not compensated for any of the investigative interviews (which the parties dispute), that Razzano and Miceli threatened Plaintiff with being arrested if he used the copy machine to copy his time cards, that Razzano and the other supervisors told Plaintiff not to show up for work at a particular location and then contacted him from another location to question him as to why he did not appear for work, and that Plaintiff's final paycheck was withheld until late February, 2019. *See* ECF No. [90-1] at 54-56, 128-33, 154; Pl. SOMF ¶ 52. As a result, Plaintiff has sufficiently made a *prima facie* showing of several adverse actions taken against him after engaging in protected activity, and before Plaintiff's actions complained of by Royster, Heller, and Velez, leading up to his status change and eventual termination.

### B. Causation

Defendant argues further that Plaintiff cannot demonstrate that his placement on emergency off duty status or his termination were caused by his engaging in protected activity.

However, as the Court noted previously, Defendant's argument ignores additional instances of adverse actions that Plaintiff contends were taken against him after Plaintiff complained about time card shaving and before Royster, Heller, and Velez's complaints. And although Defendant addresses some of these additional instances in its Reply, the Court need not engage in a lengthy analysis, as the Court has determined that Plaintiff has sufficiently established a *prima facie* case with respect to these additional adverse actions.

In order to satisfy his *prima facie* burden with respect to causation, Plaintiff attempts to demonstrate causation by showing temporal proximity. In order to evidence causation, such proximity must be "very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. . . . But mere temporal proximity, without more, must be 'very close.'" (internal citations omitted)); *see also Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14-CV-426-T-27AEP, 2015 WL 4231670, at *2-4 (M.D. Fla. July 10, 2015) ("Generally, close temporal proximity between an employee's protected conduct and an adverse employment action is circumstantial evidence giving rise to an inference of causation."). In addition, the United States Supreme Court has clarified that in cases alleging employment retaliation, a plaintiff must prove that "the unlawful retaliation would not have occurred in the absence of an alleged wrongful action or actions of the employer," meaning an employee must prove "but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (holding that evidence showing retaliation was a motivating factor in the adverse employment action is insufficient to satisfy a *prima facie* case).

Here, Plaintiff attempts to satisfy the temporal connection by arguing that after he complained about the FLSA violations, he was immediately taken off the schedule, that four days after the OIG began investigating Plaintiff's complaint, Plaintiff had the first investigative interview, he was not compensated for any investigative interviews, he was threatened, he was given mixed instructions regarding when and where to report to work, and was placed on emergency off duty status less than three months after his initial complaints. In this case, the progression and temporal proximity of these events creates an inference of causation, which Defendant fails to overcome.

To the extent that the parties engage in additional argument with respect to the causation prong, they utterly fail to support their positions with citations to legal authority. "[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (internal quotations and citation omitted). Moreover, the parties' briefs demonstrate that genuine issues of material fact remain in this case.

### C. Legitimate non-retaliatory reasons for adverse employment actions

Because the Court finds that Plaintiff has sufficiently established a *prima facie* case of retaliation, the burden shifts to Defendant to demonstrate legitimate non-retaliatory reasons for the adverse actions take against Plaintiff. Defendant argues that when employees complained that they did not feel safe with the comments Plaintiff made and his conduct, Defendant had an obligation to act and investigate. Moreover, when Plaintiff was told to come back to work and he failed to do so, Plaintiff was therefore terminated. However, Defendant's argument ignores that several of the actions taken against Plaintiff occurred before Royster, Heller, and Velez made their complaints

concerning Plaintiff's statements and behavior.[4] "[A] plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged actions." *Latham v. Dep't of Children & Youth Servs.,* 172 F.3d 786, 793 (11th Cir. 1999) (internal citation omitted).

Accordingly, summary judgment is not appropriate as genuine issues of material fact remain.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion, **ECF No. [92]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 21, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[4] Defendant has not argued that Plaintiff's conduct constituted intervening acts of misconduct that broke the causal link between the protected activity and adverse employment actions. *See Henderson v. FedEx Express,* 442 F. App'x 502, 506 (11th Cir. 2011) ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action.").